IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Kimberly M. Barnes, Executor of the Estate of John W. Barnes, Jr., and John W. Barnes III, Administrator of the Estate of Jeanette Barnes,<br><br>          Plaintiffs,<br><br>     v.<br><br>Foster Wheeler Corp., et al.,<br><br>          Defendants. | HONORABLE JEROME B. SIMANDLE<br><br><br>Civil Action<br>No. 13-1285 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

James J. Pettit, Esq.
LOCKS LAW FIRM LLC
801 N. Kings Highway
Cherry Hill, NJ 08034
     Attorney for Plaintiffs Kimberly M. Barnes and John W.
     Barnes III

David Schuyler Blow, Esq.
Michael A. Tanenbaum, Esq.
SEDGWICK LLP
Three Gateway Center
12th Floor
Newark, NJ 07102
     -and-
Joanne Hawkins
SPEZIALI, GREENWALD & HAWKINS P.C.
1081 Winslow Road
Williamstown, NJ 08094
     Attorneys for Defendant General Electric Company

**SIMANDLE, Chief Judge:**

## I.    INTRODUCTION

This matter comes before the Court on Defendant General Electric Company's ("GE") motion for summary judgment.  [Docket Item 49.]  This case arises from the death of John W. Barnes, Jr. ("Barnes") from alleged exposure to asbestos.  Plaintiffs[1] assert that Barnes was exposed to asbestos-containing products manufactured, distributed, or supplied by GE during his service in the United States Navy from 1950 to 1952 and that his exposure to these products caused his death.  GE's motion turns on whether Plaintiffs have provided sufficient evidence that GE manufactured or supplied asbestos or an asbestos-containing product to which Barnes was exposed such that a reasonable jury could find in Plaintiffs' favor.

For the reasons set forth below, GE's motion for summary judgment will be granted.

## II.   BACKGROUND

### A. Factual Background

The late Mr. Barnes served in the Navy as a fireman from May 29, 1950 to April 15, 1952 aboard the USS Everglades. (Pl.'s Ans. to Interrog., Def. Ex. B. [Docket Item 49-5] at I.4;

---

[1] The initial Complaint was filed by John Barnes, Jr. and Jeanette Barnes as husband and wife. John Barnes, Jr. died on November 21, 2011 and Jeanette Barnes died on October 25, 2011. Subsequently, an Amended Complaint was filed by Kimberly Barnes as Executrix of the Estate of John W. Barnes, Jr., and John W. Barnes III as Administrator of the Estate of Jeanette Barnes. The docket should, but does not, reflect the substitution of these individuals as plaintiffs.

Def. Statement of Undisputed Facts ("SMF") [Docket Item 49-2] ¶ 2.) Mr. Barnes died from mesothelioma (Pl.'s Ans. to Interrog. at I.9) before being deposed in this matter. (SMF ¶ 3.) GE furnished two propulsion turbines for the USS Everglades on or about July 8, 1944. (SMF ¶ 7.) The GE shipment invoice for these turbines, dated July 8, 1944, indicates GE supplied the turbines, supports, spare parts, wrenches, and accessories, but does not mention insulation. (Def. Ex. E. [Docket Item 49-8.])

Archie Darling also served aboard the USS Everglades from 1951 to 1956. (SMF ¶ 6.) Darling certifies that he "personally kn[e]w that [f]iremen on the USS Everglades from 1952 to 1953 worked around" the turbines in the engine room, the boiler in the fire room, the pumps in the fire room, and the pumps in the engine room. (Certification of Archie Darling ("Darling Cert"), Def. Ex. C. [Docket Item 49-6] ¶ 4.) Darling also states that he knows "there was asbestos insulation in the fireroom and engine room in the USS Everglades because it was very commonly referred to as asbestos among crew members in the engineering department." (Id. ¶ 5.) Additionally, "no one ever told [Darling], or crew members in [his] presence on the USS Everglades . . . that asbestos was a health hazard." (Id. ¶ 6.)

3

James Burel[2] served in the Navy aboard the USS Everglades and worked with Barnes "on a regular and frequent basis from September 1952 to November 1953." (Certification of James Burel ("Burel Cert"), Pl. Ex. A. [Docket Item 53-3] ¶¶ 2-3.)  Burel "saw [Barnes] exposed to the dust from the external insulation on the turbine, boiler, motors and pumps on a regular and frequent basis from September 1952 to November 1953." (Id. ¶ 5.)  Barnes was exposed to the dust at least three times per

---

[2] GE objects to Plaintiffs' reliance on Burel's certification on the grounds that it is inadmissible at trial and cannot be considered for purposes of a motion for summary judgment because it is inaccurate and based on unsupported hearsay statements. GE also contends that Plaintiffs have failed to comply with Fed. R. Civ. P. 26 by refusing to provide GE with a good address for Burel, and as a result, GE has been unable to depose Burel despite good faith efforts since 2011.  (Def. Br. at 1 n.1.) The Court will consider Burel's certification on this motion for summary judgment because his declarations, for the most part, are not in fact hearsay as they are based on his personal knowledge.  The Court will address the hearsay aspect of Burel's certification as necessary below.  Furthermore, Fed. R. Civ. P. 56 permits use of an affidavit to support or oppose a motion as long as it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Evidence "produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present the evidence through direct testimony, i.e., in a form that 'would be admissible at trial.'" J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990) (citing Williams v. Borough of West Chester, 891 F.2d 458, 465-66 (3d Cir. 1989)).  Burel's certification satisfies these requirements.  No rule requires Plaintiffs to have made Burel available for deposition prior to relying on his certification in opposition to GE's motion for summary judgment. However, if Plaintiffs intend to call Burel as a witness at trial and he remains unavailable for a discovery or trial deposition, GE may seek to bar his testimony in a pre-trial motion.

month for the 14 months between September 1952 and November 1953. (Id. ¶ 5.) Burel states that he knew the "insulation was asbestos because it was very commonly referred to as asbestos among crew members in the engineering department, and because it was only placed on high temperature equipment." (Id. ¶ 6.) Additionally, Burel was unaware "of any non-asbestos insulation in the early 1950's which could possibly be placed on this high temperature asbestos equipment." (Id. ¶ 6.) Burel asserts that none of the crewmembers in the engineering department of the USS Everglades during this time knew that asbestos was a health hazard, nobody wore a mask in the fire or engine room on the USS Everglades during this time period, and Burel did not see Barnes wear a mask. (Id. ¶ 7.)

Importantly, neither Darling nor Burel identifies the manufacturer or supplier of the insulation discussed above. Neither certification mentions GE or any other defendant in this action.

**B. Procedural Background**

Barnes filed suit on November 4, 2011 in the Superior Court of New Jersey, Middlesex County against Foster Wheeler Corp., General Electric Company, Goulds Pump Inc., Ingersoll Rand Company Limited, and Owens Illinois Incorporated alleging that he continually worked with, used, handled and was caused to come in contact with Defendants' asbestos-containing products and the

5

asbestos dust and fibers resulting from the ordinary and
foreseeable use of same.[3]  (Compl. [Docket Item 1-1] ¶ 7.)
Barnes asserted various tort claims against Defendants,
including failure to warn, breach of implied warranty, strict
liability, and product liability.  (Compl. [Docket Item 1-1.])
On February 21, 2013, GE removed the case to the United States
District Court for the District of New Jersey pursuant to 28
U.S.C. §§ 1442(a)(1) and 1446 on the grounds that GE acted under
the authority, direction and control of an officer or agency of
the United States and therefore maintains a colorable federal
law-based "government contractor" defense to Plaintiffs' claims.
[Docket Item 1.]  On March 19, 2013, Plaintiffs filed a motion
to remand [Docket Item 6], which the Court denied by Opinion and
Order dated June 11, 2013 [Docket Items 11 & 12].  Plaintiffs
filed an amended complaint on July 11, 2013 [Docket Item 20]
after Barnes died and added Allis-Chalmers Corporation[4] and
Gardner Denver, Inc. as additional defendants.[5]  GE then filed
the instant motion for summary judgment on March 31, 2014.[6]

---

[3] Plaintiff also filed suit against twenty fictitious
corporations.
[4] Plaintiffs voluntarily dismissed their claims against
Defendants Owens Illinois Incorporated and Allis-Chalmers
Corporation on June 21, 2013 and August 7, 2013 respectively.
[Docket Items 14 & 28.]
[5] The Amended Complaint also asserts claims under the New Jersey
Wrongful Death Act and Survival Act.
[6] GE's motion for summary judgment was filed within the timeframe
set forth in Judge Schneider's scheduling order for the filing

[Docket Item 49.]  Plaintiffs filed opposition to GE's summary judgment motion on May 9, 2014.  [Docket Item 53.]  GE did not file a reply.

**III. STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Essentially, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party.  Hunt v. Cromartie, 526 U.S. 541, 551 (1999).

**IV.  DISCUSSION**

GE's motion for summary judgment is based on two arguments. First, GE argues that Plaintiffs have failed to provide any

---

of dispositive motions on product identification.  [Docket Item 38.]  The Order notes that the Court will address the schedule for expert reports and depositions after the parties' product identification motions are decided.  (Id. ¶ 3.)

evidence of Barnes' exposure to any asbestos-containing product
manufactured, supplied, or distributed by GE.  Second, GE argues
that, even if Plaintiffs could identify an asbestos-containing
product manufactured, supplied, or distributed by GE, summary
judgment should be granted because the Plaintiffs have failed to
sufficiently show that Barnes was regularly and frequently
exposed to any such product.  Plaintiffs respond that, under
Kurak v. A.P. Green Refractories Co., 298 N.J. Super. 304 (App.
Div. 1997), where, as here, an individual is diagnosed with
mesothelioma, plaintiff's burden of proof on the extent of
exposure to asbestos is greatly reduced.

In New Jersey, "to prevail against a particular defendant
in an asbestos case, a plaintiff must establish, in addition to
other elements of a product liability action, exposure to
friable asbestos manufactured or distributed by the defendant."
Sholtis v. Am. Cyanamid Co., 238 N.J. Super. 8, 30 (App. Div.
1989).  Furthermore, to defeat summary judgment, plaintiff must
adduce evidence such that "reasonable jurors could infer that
sometime during [plaintiff's] work histor[y] . . . plaintiff[
was] exposed to a defendant's friable asbestos frequently and on
a regular basis, while [plaintiff was] in close proximity to
it[,]" as well as "competent evidence, usually supplied by
expert proof, establish[ing] a nexus between the exposure and
plaintiff's condition."  Id. at 31.  In Kurak, the court

8

recognized a lower causation standard in cases where plaintiff has been diagnosed with mesothelioma. Kurak, 298 N.J. Super. at 322. The court stated that, "unlike asbestosis or cancer of the lung caused by asbestos, mesothelioma, a cancer of the lining of the lung, can be caused by relatively small exposures to asbestos". Id. at 311.

It is well established that a plaintiff must demonstrate some level of exposure to a defendant's asbestos-containing product. See Goss v. Am. Cyanamid, Co., 278 N.J. Super. 227, 236 (App. Div. 1994) (noting that it would be insufficient for plaintiff to show that asbestos-containing products supplied by defendant were used in plaintiff's workplace without actual proof linking plaintiff's alleged exposure to those products). In other words, to prevail on a tort claim for asbestos exposure, plaintiff must identify an asbestos-containing product manufactured or supplied by defendant. See Provini v. Asbestospray Corp., 360 N.J. Super. 234, 238-239 (App. Div. 2003); Wilkerson v. Armstrong World Indus., Inc., Civ. 89-2494 (AMW), 1990 WL 138586, at *4 (D.N.J. Sept. 19, 1990); Persichetti v. Armstrong World Indus., Civ. 89-2368 (CSF), 1990 WL 72074, at *3 (D.N.J. May 14, 1990).

In Provini, the executor of decedent's estate brought a wrongful death and product liability action against several defendants, alleging that decedent was exposed to asbestos that

was manufactured, distributed, imported, or used by defendants. Provini, 360 N.J. Super. at 236.  Plaintiff asserted that decedent was exposed to defendants' asbestos-containing product when "[decedent] was employed by [defendant] for short periods of time in 1955 and again in 1960."  Id. at 237.  However, plaintiff presented no evidence as to where decedent worked for defendant or that he was ever exposed to defendants' asbestos-containing product.  Id.  Because plaintiff could not "demonstrate that the decedent was ever exposed to the product," the Appellate Division upheld the trial court's entry of summary judgment in defendants' favor.  Id. at 238-239.  In Wilkerson, plaintiffs alleged that Wilkerson was exposed to defendants' asbestos-containing products through his employment as a sheet worker, laborer, and carpenter.  Wilkerson, 1990 WL 138586, at *1.  Wilkerson attested that he believed the insulation defendants manufactured and to which he was exposed contained asbestos only because several people told him so.  Id. at *3. The court granted defendants' motions for summary judgment because "even if the court considered [his] speculative and hearsay evidence, plaintiffs [had] not raised a reasonable inference that Mr. Wilkerson was exposed in any substantial way to defendants' asbestos-containing products."  Id. at *4.

Similarly, in Persichetti, plaintiff filed suit against eighteen defendants alleging that he contracted asbestosis as a

result of his exposure to defendants' products during his time in the Navy and subsequently while self-employed in the heating and air conditioning business.  Persichetti, 1990 WL 72074, at *1.  At plaintiff's deposition, he identified certain products supplied by one of the defendants that he "thought contained asbestos."  Id. at *2.  It was undisputed that defendants made one sale of an asbestos-containing product in New Jersey, but "this one sale was neither shipped nor sold to any of the plaintiff's employers."  Id. at *1.  As such, the court concluded that there was insufficient evidence to support plaintiff's claim that he was exposed to asbestos-containing products supplied by defendants and granted their motions for summary judgment.  Id. at *3.

These cases are distinguishable from Sholtis and Kurak where it was clear that plaintiffs were exposed to asbestos-containing products supplied by defendants.  Sholtis, 238 N.J. Super. at 14 (accepting supplemental affidavits and deposition testimony confirming the presence of defendants' asbestos-containing products at American Cyanamid during plaintiffs' employment there); Kurak, 298 N.J. Super. at 313 ("[T]he evidence shows that substantial amounts of asbestos-containing Kaylo were present throughout the [defendant's] facilities sometime after 1958.").  Accordingly, it was necessary for the

11

Sholtis and Kurak courts to consider the frequency and
regularity of plaintiffs' exposure to asbestos.

In the present action, the Court finds that Plaintiffs have
failed to identify any asbestos-containing product manufactured
or supplied by GE.  It is undisputed that GE supplied the Navy
with two propulsion turbines for use on the USS Everglades.
However, Plaintiffs provide no evidence that these turbines
contained asbestos, nor any evidence of any other asbestos-
containing product manufactured, supplied, or distributed by GE.
There is also no evidence that GE supplied the insulation that
surrounded the turbines or elsewhere in the vessel.  Upon this
record, there is no available inference that these GE turbines
contained asbestos.

Here, like Wilkerson, the only evidence that Barnes was
exposed to asbestos consists of assertions by Darling and Burel
that they heard other crew members refer to the insulation as
asbestos.  As in Wilkerson, the Court notes that such
"[s]peculation is insufficient to establish a material fact on
which to base a denial of summary judgment." Wilkerson, 1990 WL
138586, at *2.  The present record invites only speculation and
prevents a reasonable jury from finding that GE manufactured or
supplied any asbestos or asbestos-containing product to which
Barnes was allegedly exposed on the USS Everglades.

12

Further, the only evidence in the record connecting Barnes's alleged exposure to any asbestos or asbestos-containing product is hearsay and cannot be considered on this motion for summary judgment because such hearsay is inadmissible.  See *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 465-66 (3d Cir. 1989)).  Burel contends that he "saw [Barnes] exposed to the dust from the external insulation on the turbine, boiler, motors and pumps on a regular and frequent basis" and "kn[e]w th[e] insulation was asbestos because it was very commonly referred to as asbestos among crew members in the engineering department, and because it was only placed on high temperature equipment."  (Burel Cert. ¶¶ 5-6.)  Similarly, Darling certifies that he "kn[e]w there was asbestos insulation in the fireroom and engine room in the USS Everglades because it was very commonly referred to as asbestos among crew members in the engineering department."  (Darling Cert. ¶ 5.)  These statements are hearsay not within any exception, and Plaintiffs have presented no additional evidence to prove that the turbines actually contained asbestos, let alone asbestos supplied by GE.

Even if the Court were to consider this hearsay evidence, at most the record would support the inference that the turbines provided by GE were surrounded by insulation containing asbestos.  However, the mere presence of an asbestos-containing

product is not enough to establish causation in an asbestos

case.  A "plaintiff cannot rest on evidence which merely

demonstrates that a defendant's asbestos product was present in

the workplace or that he had 'casual or minimal exposure' to

it."[7]  Kurak, 298 N.J. Super. at 314 (citing Goss, 278 N.J.

Super. at 236).  Plaintiffs here have shown even less because

they have failed to adduce sufficient evidence for reasonable

jurors to infer that the insulation was manufactured or supplied

by GE.  Therefore, because Plaintiffs have provided insufficient

evidence that Barnes was exposed to asbestos or an asbestos-

containing product manufactured or supplied by GE, the Court

must grant GE's motion for summary judgment.[8]

---

[7] Courts have found that manufacturers cannot be "liable for harm
caused by asbestos products they did not manufacture or
distribute because those manufacturers cannot account for the
costs of liability created by the third parties' products."
Conner v. Alfa Laval, Inc., 842 F. Supp. 2d 791, 801 (E.D. Pa.
2012) (addressing plaintiffs' claims against various defendants
that manufactured turbines, pumps, boilers, and valves that were
designed to be used and were sometimes distributed with
asbestos-containing insulation and other products, including GE-
manufactured marine turbines that required exterior insulation
and asbestos-containing gaskets).  See also Lindstrom v. A-C
Prod. Liab. Trust, 424 F.3d 488, 495-97 (6th Cir. 2005)
(affirming summary judgment in defendants' favor because a
manufacturer cannot be responsible for a third party's asbestos-
containing products).
[8] Because the Court finds that Plaintiffs have failed to present
admissible evidence that Barnes was exposed to any asbestos or
asbestos-containing product manufactured or supplied by GE, the
Court will not consider the frequency and regularity of Barnes'
alleged exposure.

**V.    CONCLUSION**

For the reasons stated above, the Court will grant GE's motion for summary judgment and dismiss all claims against GE with prejudice.  An accompanying Order will be entered.


**June 30, 2014**                          **s/ Jerome B. Simandle**
Date                                JEROME B. SIMANDLE
                                    Chief U.S. District Judge

15